UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

IN RE:                          .      Case Nos. 14-45187-ESS,
                                .                14-45189-ESS
                                .
LIBERTY TOWERS REALTY   .      271-C Cadman Plaza East
LLC, and LIBERTY        .      Brooklyn, NY 11201-1800
TOWERS REALTY I, LLC,   .
                                .
        DEBTORS.        .
                                .      July 13, 2015
. . . . . . . . . . . . . . .   3:54 p.m.

TRANSCRIPT OF STATUS CONFERENCE; MOTION TO RECONSIDER FILED BY
   DAVID CARLEBACH ON BEHALF OF LIBERTY TOWERS REALTY, LLC;

BEFORE HONORABLE ELIZABETH S. STONG
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For Liberty Towers          The Carlebach Law Group
realty, LLC:                By:  DAVID CARLEBACH, ESQ.
                            55 Broadway, Suite 1902
                            New York, NY 10006

For WF Liberty LLC:         Farrell Fritz, PC
                            By:  MICHAEL J. HEALY, ESQ.
                            1320 RXR Plaza
                            Uniondale, NY 11556

For Richmond Liberty        Kriss & Feuerstein, LLP
LLC:                        By:  GREG A. FRIEDMAN, ESQ.
                            360 Lexington Avenue
                            New York, NY  10017

For U.S. Trustee's          Department of Justice
Office for the EDNY:        By:  MARYLOU MARTIN, ESQ.
                            201 Varick Street, Suite 1006
                            New York, NY 10014

Audio Operator:             Fanny Randazzo

Proceedings recorded by electronic sound recording, transcript
              produced by transcription service.

_____

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@jjcourt.com**
**(609) 586-2311  Fax No.  609)587-3599**

1          THE COURT:  Good afternoon, please be seated.

2          COURTROOM DEPUTY:  Number 88 through 93 on the

3    calendar, all matters regarding Liberty Towers Realty LLC and

4    Liberty Towers Realty I, LLC.

5          MR. CARLEBACH:  Good afternoon, Your Honor, David

6    Carlebach representing the debtors, Liberty Towers Realty, LLC

7    and Liberty Towers Realty I, LLC.

8          MR. HEALEY:  Good afternoon, Your Honor, Michael

9    Healey with Farrell Fritz, PC counsel for the lender W. F.

10   Liberty.

11          THE COURT:  Thank you.

12          MS. MARTIN:  Mary Lou Martin representing United

13   States Trustee.

14          THE COURT:  Thank you.

15          MR. FRIEDMAN:  Greg Friedman from Kriss & Feuerstein

16   on behalf of Richmond Liberty LLC.

17          THE COURT:  All right, thank you.  All right, we have

18   a number of matters on the calendar today beginning, as always,

19   with the 11 -- in Chapter 11 with our adjourned status

20   conferences.  And just to summarize what's coming, the Motion

21   to Reconsider for Liberty Towers Realty, LLC and similarly

22   status on Motion to Reconsider in Liberty Towers Realty I, LLC.

23          In addition the motion that was filed on Friday

24   evening has been added to the calendar, the motion seeking

25   certain expedited relief.

1          Mr. Carlebach, let's hear from you.  Let's start with

2  status.

3          MR. CARLEBACH:  With respect to status, the debtors

4  are current on their monthly operating reports.  They may owe a

5  few dollars in Trustee fees.  I know my office was

6  communicating with the debtors as late as today to try to get

7  those things paid, but we may owe a few dollars.  The Office of

8  the United States Trustee may have a better idea about that.

9          THE COURT:  How are we doing on operating reports?

10          MR. CARLEBACH:  We are up to date on operating

11  reports.

12          THE COURT:  And on the UST fees are they current?

13          MS. MARTIN:  Your Honor, Liberty Towers Realty owes

14  $325; Liberty Towers Realty I owes -- Liberty Towers I, I'm

15  sorry -- owes $976.

16          THE COURT:  Okay.  It'd be nice to get those sums

17  paid.  I know we've conferenced on them from time-to-time.

18          MR. CARLEBACH:  It's just, you know, there's

19  unfortunately sometimes the smaller items get lost in the

20  shuffle and I try to impress upon the debtors that, you know,

21  the devil is in the details and that these things need to get

22  done.  And they inevitably get done, but they will -- if the

23  court wants to set a date for that, we can --

24          THE COURT:  Let's do that.  And then I see we also

25  issued a direction to re-file a document in the -- I'll call

1  it -- in the first case, Liberty Towers Realty because there

2  was some information individual person --

3         MR. CARLEBACH:  Yes there was some -- there was a

4  redaction issue.  I believe my office, you know, --

5         THE COURT:  It's with respect to Document Number 55.

6  Can we just check and see if that has been taken care of?  This

7  is really something we do to protect the parties if we see

8  something that should be omitted from a filing.  We can

9  temporarily -- but not permanently -- restrict access to a

10 document and we do that, of course, to protect that

11 confidential information, so, whatever it may be.

12        COURTROOM DEPUTY:  Number 57, I think would be --

13        THE COURT:  Fifty-five and -- it's -- oh, so 57

14 addresses the problem; is that right?

15        COURTROOM DEPUTY:  Yeah I'm just going through the

16 computer.

17        THE COURT:  We'll check to be sure.  If not, we'll

18 let you know before --

19        MR. CARLEBACH:  I know I wasn't -- I was speaking to

20 my office about taking care of it.  I'm not sure if it was

21 actually done.  But we were on top of that issue.

22        I mean, that's really -- in terms of status, that's

23 really what's going on.  There was -- the court also had --

24 there was also discussion in the context of the lift stay,

25 there was a discussion about the real estate taxes and --

1    THE COURT:  And I meant to ask, thank you.

2    MR. CARLEBACH:  No, I actually -- I have a check.  I

3 forgot to bring it with me -- I annexed it to my papers.  But

4 there is -- we do have a check ready for -- you know, we ask

5 the mortgagee for a calculation of how much had been paid by

6 his client and, you know, in our estimation it was -- we're

7 talking about post-petition taxes -- it was something in the

8 $85,000 range and we do have a check to pay that.

9    The DIP account has been funded by the debtor to pay

10 those.

11    THE COURT:  To permit the payment of that?

12    MR. CARLEBACH:  Exactly and the check has been

13 written out and like I said I just -- I neglected to bring it

14 with me today, but I can retrieve it, so to speak, you know,

15 and, you know, represent that we will make that payment.

16    And again as I put in my papers the only reason --

17 you know, I had directed the debtor to pay that immediately.

18 The debtor had been in conversations with the secured

19 creditor's principal about a resolution to this whole dispute,

20 so to speak.  And the taxes were also part of that discussion.

21    And it was only in the last few days that it appeared

22 that the discussions had faltered that I directed the debtor

23 that it needs to write that check immediately.

24    And it was -- it is -- and again I never -- just to

25 be clear -- I never directed the debtor not to comply with the

1  court's directive.  But the debtor on it's own felt that since

2  it was going to resolve it, but in any event, the check is

3  available and I was prepared to hand it to the secured creditor

4  today but I, like I said I was --

5         THE COURT:  And just to step back, the approach being

6  to reimburse the expense already incurred to keep the taxes

7  current.

8         MR. CARLEBACH:  Correct.

9         THE COURT:  Okay.

10        MR. CARLEBACH:  There may be a new July bill that has

11  come due, which we would be responsible for.  This was --

12        THE COURT:  Okay.

13        MR. CARLEBACH:  -- you know, what had been paid

14  already from January through July.  I mean it's like a -- they

15  come due either quarterly or bi-annually.  And, you know, so we

16  are prepared to bring that current.  And again, that's a very

17  serious dollar.  It's close to $85,000.  And, you know, --

18        THE COURT:  All the more reason to pay it.

19        MR. CARLEBACH:  Which we will pay.

20        THE COURT:  This is a serious expense that has been

21  incurred and not paid in the post-petition period, not paid by

22  the debtor.  So that's a concern however the case goes.

23        All right and I take it that it's the debtor's --

24  well staying with status, Ms. Martin?

25        MS. MARTIN:  Your Honor, I have nothing else to add

1  in the court's status.

2          THE COURT:  From a secured creditor's perspective?

3          MR. HEALEY:  A couple observations, Your Honor.

4  First of all it's unclear to the lender where the source of

5  these funds originates.

6          THE COURT:  The $85,000?

7          MR. HEALEY:  Correct.  They're -- these properties

8  that the debtors own are not improved.  They do not, there's

9  any income.  So the question is where is this money coming

10 from.

11         THE COURT:  From a Chapter 11 standpoint that's a

12 good question to ask.  Is this a borrowing by the debtor?  Is

13 it a capital contribution.

14         MR. CARLEBACH:  Your Honor, we could -- it's a

15 capital contribution.  This is not a -- we did not apply for a

16 borrowing order and the debtor -- in the same way -- you know,

17 the secured creditor counselor is correct.  The debtor does not

18 earn income and like U.S. Trustee fees and insurance -- all

19 those expenses are being borne by the debtor's principal as a

20 capital contribution, you know, without any -- we have not

21 sought a borrowing order --

22         THE COURT:  Without any expectation of repayment?

23         MR. CARLEBACH:  Exactly.  So it's -- you know, we

24 haven't sought relief under 364 and, you know, it's just --

25 Your Honor, I mean that's just part of the, you know, part of

1  the being -- the price of being a Chapter 11 is making sure

2  that admins are paid, you know, whatever it is.  And the debtor

3  is committed to doing that.

4          THE COURT:  Okay.

5          MR. HEALEY:  Also, Your Honor, I noticed on the copy

6  of the check --

7          THE COURT:  But -- I'm so sorry -- but just to be

8  clear the source of the funds is the debtor's principal

9  personal funds?

10          MR. CARLEBACH:  Correct.

11          MR. HEALEY:  Which principal is that?

12          THE COURT:  Would that be -- well could you identify

13  the individual?

14          MR. CARLEBACH:  Toby Luria is the debtor.

15          THE COURT:  All right, Mr. Luria.  And Mr. Luria is

16  here today in court?

17          MR. CARLEBACH:  That's -- no Ms. Luria is not here

18  today in court.

19          THE COURT:  I'm sorry.

20          MR. CARLEBACH:  And the gentleman to my right, his

21  name is Larry Deluca (phonetic) -- Lorenzo Deluca -- who is

22  the -- he is the purchaser under the respect --

23          THE COURT:  Of course and I think you've been here

24  before.  All right.  Thank you for coming in.

25          MR. HEALEY:  Another observation about the check that

1  was annexed to the debtor's most recent motion.  The check is

2  drawn on the DIP account of one of the debtors.  And it's

3  unclear whether the -- whether the amount of taxes being

4  tendered or intended to be tendered it represents taxes for

5  that one debtor or for both debtors.

6          If it's intended to be payment of taxes or

7  reimbursement of taxes for both debtors, there should be

8  separate checks.  One from each of the debtors.

9          THE COURT:  There are two DIP accounts are there not?

10          MR. CARLEBACH:  There are.

11          THE COURT:  Both at Capital One Bank?

12          MR. CARLEBACH:  Yes.

13          THE COURT:  Okay, so is the check -- you have one

14  check for each property.

15          MR. CARLEBACH:  Secured creditors counsel is probably

16  correct and one of the difficulties in this, we're dealing with

17  a real slew of parcels of land.  And when I asked secured

18  creditor for, you know, evidence of what's been paid, we got

19  about 10 to 15 checks.

20          THE COURT:  My question was actually is it one check

21  or two checks?

22          MR. CARLEBACH:  It's one check.

23          THE COURT:  One check and does it address -- or is it

24  intended to reimburse expenses incurred for real estate taxes

25  for each of the two entities, the two debtors?

1          MR. CARLEBACH:  Correct.

2          THE COURT:  Do you think it would be -- I'm going to

3  suggest that it may well be better to have a separate check

4  from each respective DIP account with the monies flowing into

5  the account and then out of the account as capital

6  contributions for each of the separate entities.  Otherwise it

7  seems to me you've got a -- at least as a technical matter --

8  you've set up an inter-debtor transaction where the principal

9  funds -- one entity which then funds obligation of another

10 entity.

11         MR. CARLEBACH:  Point is very well taken, Your Honor.

12 And --

13         THE COURT:  It may be a question of two deposit slips

14 and two checks rather than one deposit slip and one check.

15 You'll save yourself a lot of trouble down the road, I think to

16 do it that way.

17         MR. CARLEBACH:  As long as we can -- it just

18 necessitates a breakdown of what's owed for what -- for one --

19         THE COURT:  Yes.

20         MR. CARLEBACH:  -- and one for the other debtor.

21         THE COURT:  I agree.  But I think the debtor entities

22 need to know what taxes they are responsible for.

23         MR. CARLEBACH:  We can -- we can do that.

24         THE COURT:  Is there ambiguity at the moment as to

25 what taxes are owed, for example, by Liberty Towers Realty as

1  opposed to Liberty Towers Realty I?

2          MR. CARLEBACH:  There is not real ambiguity because

3  at the end of the day, you can always go on to the New York

4  City Department of Finances website and ascertain exactly

5  what's owed for what.

6          THE COURT:  How many lots?  If you think in terms of

7  borough, block and lot.  How many lots are involved here --

8          MR. CARLEBACH:  A lot.

9          THE COURT:  -- more or less.  Actually I'll say

10  preciously.  I take it more than two.

11          MR. CARLEBACH:  Yes, yes.  It's eight and five is the

12  breakdown.

13          THE COURT:  Eight and five.  I miss heard you to say

14  85 for a moment.  The good news is we have a lot of real

15  property.  The bad news is we have a lot of attention to

16  detail.

17          So I think it's important to sort that out and

18  deliver those checks by -- when do you think is a reasonable

19  time frame?  A week?  A lot of time to sort those out.

20          MR. CARLEBACH:  Yes, we'll get that done within a

21  week, Your Honor.

22          THE COURT:  But I want to make it practical.  Does

23  that work?  And those are bank checks?

24          MR. CARLEBACH:  Well they're DIP checks in the first

25  instance.

1          THE COURT:  Certified checks?

2          MR. CARLEBACH:  We can certify them if that's how the

3  court directs.

4          THE COURT:  Does it make sense?  I think it make

5  sense.

6          MR. CARLEBACH:  Yes, Your Honor.

7          THE COURT:  Are there any properties that are owned

8  by both entities?

9          MR. CARLEBACH:  Not that I'm aware of.

10          THE COURT:  Okay.  So far as you know there's five in

11  one and eight in the other and they are separate?  Okay, that's

12  good.

13          All right, what's next?

14          MR. HEALEY:  One other observation if I may, Your

15  Honor.  Mr. Carlebach made references to negotiations -- or

16  recent negotiations between the parties.  I spoke to my

17  clients, both principal and my client, just before leaving for

18  court this afternoon, and they both confirmed that there had

19  been no on-going discussions whatsoever.

20          THE COURT:  Even communication?

21          MR. HEALEY:  There have been no discussion -- whether

22  Mr. Puritz (phonetic) on behalf of the debtor reached out to my

23  clients, maybe a question for the fact my clients have not

24  responded to any overture.  My clients are insisting on

25  enforcing their rights under the lift stay order.

1        MR. CARLEBACH:  It sounds almost like a broken record

2   because this conversation -- we've had this.  Whether they

3   have.  I've been in daily communication with Mr. Puritz who's

4   been negotiating on behalf of the debtor.  He's had extensive

5   communications with Mr. Konig.

6        There are two principals of the debtor.  There's a

7   father and a son.  And I've had this conversation with Mr.

8   Healey that there has been some times different communications

9   coming out from, you know, and I'm prepared to put in sworn

10  affidavits in that regard --

11       THE COURT:  It doesn't address a disputed issue

12  before the fact -- before the court.  There's no need to put in

13  testimony as to whether the parties are trying to resolve

14  matters consensually.  I encourage the parties to try to

15  resolve matters consensually in this and nearly every other

16  case.

17       I do often see situations where what one party calls,

18  you know, productive discussions another party sees very

19  differently.  The presence or absence of communication is

20  usually an objective fact and whether that's happening or not,

21  it seems to me since the outset that the path of all concerned

22  with respect to these properties has been a path directed

23  toward a sale.

24       And in view of that often it can be productive to

25  talk to each other and see what the best, most efficient, most

1  affective way to sell the property is.  I assume your point is,

2  you know, the first, second and third priorities are to get

3  paid and to get paid promptly.  And whoever is the buyer in the

4  transaction, at least the funds that cause you to be paid may

5  well not matter much to the secured creditors, so.

6      But I'm not telling you anything you don't already

7  know as good and experienced counsel practicing in this area.

8  So on consent the debtor will reimburse secured creditor for

9  post-petition real estate taxes paid by DIP certified check by

10 July 20th, 2015.  That'll be so ordered.

11     All right.  Is there anything else with respect to

12 status that requires the courts attention that would be helpful

13 for the court to know?  No response.

14     All right.  What has happened since our last status

15 conference?  I know the lift stay order has been out there for

16 sometime now.  What if any -- what's happened from the secured

17 creditors?

18     MR. HEALEY:  We have scheduled a foreclosure sale to

19 occur for both properties on July 16th.

20     THE COURT:  July 16th.  Okay, that is to say

21 Thursday.  All right.  I think that brings us then to the

22 motion to reconsider in the Realty and Realty I case.

23     Mr. Carlebach, it's your motion.  Unless there's

24 anything else to address I think it's appropriate for me to

25 hear from you.

1          MR. CARLEBACH:  Thank you, Your Honor.  And just to

2    be clear, the emergency motion to reimpose the stay is

3    really -- it's really an extension of the reconsideration

4    motion.  It's just that I know that Your Honor does not like to

5    act without an application before the court seeking that

6    specific relief.

7          And the, you know, this court could in theory take

8    the reconsideration motion under advisement.  And even it were

9    inclined to grant the relief we ask for, but not necessarily

10   rule until after the foreclosure sale went forward so I wanted

11   to just impress upon the court that we do have this foreclosure

12   sale scheduled for a few days from today and that unless the

13   court grants us some kind of temporary injunctive relief today

14   basically the reconsideration motion will become moot.

15          THE COURT:  I can decide -- I worked hard to be in a

16   good position to hear your argument.  Take a break if I need

17   you to reflect, but I tried really hard to rule on it today.

18   It's our second hearing.  It was calendared for June 9th

19   originally, was it not?  Unlike the other motion which was made

20   on Friday night, this one the parties have had a chance to

21   address; court's had a chance to consider.  I think we did have

22   a prior conference on this motion.

23          MR. CARLEBACH:  We did on June 9th.  We did.

24          THE COURT:  So there's no reason not to proceed

25   today.

1          MR. CARLEBACH:  Okay, --

2          THE COURT:  I look forward to hearing the argument.

3          MR. CARLEBACH:  -- and that's fine.  I took -- again

4   I took the liberty of making -- aware that the court is already

5   familiar with the issues are basically before the court

6   already.

7          THE COURT:  When it's a reconsideration motion, it's

8   necessarily the case that the case is familiar with the issues.

9   The court has ruled.  The court is being asked to reconsider

10  its own decision, so please proceed.

11         MR. CARLEBACH:  So essentially what we have argued is

12  that there was a new development which at the time that the

13  lift stay motion was pending the debtor was unaware of -- which

14  was basically that a third party, Richmond Liberty, who is

15  represented by counsel here today, had filed a lis pendens

16  against the debtors property during the pendency of the

17  bankruptcy case.

18         And Richmond Liberty is, as Your Honor, is not a

19  party in this case in the first instance.  We have sued them in

20  our adversary proceeding, but before that they were not a

21  party.  They're only relationship to the case is apparently

22  they entered into a pre-petition contract with the secured

23  creditor, W.F. Liberty, which basically was, you know, I guess

24  the most favorable way to couch it would be a best efforts

25  contract that if and when W.F. Liberty got the property at a

1 foreclosure sale -- because it was entered into before the

2 bankruptcy was filed -- it would then sell it to Richmond

3 Liberty for a price of 8,750,000.  That was -- that's sort of

4 where that number comes from.

5        And what then happened was we filed the bankruptcy

6 case, which stayed the foreclosure and sort of stymied Richmond

7 Liberty's efforts to get the property through their contract.

8 So they went ahead and sued W.F. Liberty in State court

9 essentially arguing that what was going on in the Bankruptcy

10 court was a violation of their state law contract.

11        In fact, they make mention of a status conference

12 that we had in this court where it was actually an adjournment

13 of the original lift stay motion in February where the debtor

14 was discussing a deal that it would have with W.F. Liberty and

15 basically what they said was any discussion of a deal with the

16 debtor is a violation of our pre-petition contract to, you

17 know, get us the property.

18        And, you know, one of our arguments is that, you

19 know, --

20        THE COURT:  Does the contract contain a no-shop

21 provision?  How would it be a violation of a contract to talk

22 to someone in a courthouse about a possible resolution to a

23 dispute?

24        MR. CARLEBACH:  Well, I'm in accord, Your Honor.  We

25 believe that the -- we believe that the action was frivolous

1  and was meant to intimidate W.F. Liberty into not doing a deal

2  with the debtor.  And then what they went ahead to really drive

3  the point home, they went ahead and filed the lis pendens

4  against the debtor.

5         Even though they had no connection with the debtor

6  they had a state court dispute, if you can call it that, with

7  W.F. Liberty about property that W.F. Liberty didn't own --

8         THE COURT:  The state law with respect to a lis

9  pendens is pretty clear isn't it when you're entitled to --

10        MR. CARLEBACH:  It is.  And in fact --

11        THE COURT:  It simply puts the world on notice of a

12  case and case is separately a matter of public record.

13        MR. CARLEBACH:  It's only when you have a dispute

14  over property that's owned by one of the parties.  You can't

15  put a lis pendens on the property of a third party.  The debtor

16  was not a party to this dispute.

17        THE COURT:  So what is -- for the sake of a clear

18  record, there's a standard on a motion to reconsider and of

19  course it has to go beyond we disagreed with the result at the

20  time and we still disagree.  They're very particular standards

21  and there should be because if motions to reconsider are too

22  freely granted then the finality of orders will be put at risk

23  and particularly in the bankruptcy context where we move

24  forward in a case -- especially in a Chapter 11 -- on the basis

25  of a series of orders entered -- often sometimes contested,

1  often consensual.

2          I think it would be helpful to focus on the motion

3  you've made, the relief you seek, the standard and how you meet

4  the standard.  Because that's what I need to do in order to

5  decide your motion.

6          MR. CARLEBACH:  The standard is that the moving party

7  has to show that there are new facts which were not in its

8  possession at the time that it made the motion or the court

9  made the ruling that have come to light which would be

10 grounds -- which if the court and the parties had been aware of

11 that fact, they would not have entered the order.

12         THE COURT:  Right.

13         MR. CARLEBACH:  The lis pendens filed, which the

14 debtor was not aware of, was firstly, Your Honor correctly

15 points out as a matter of state of law, illegal.  It was an

16 illegal --

17         THE COURT:  That is not what I said, to be clear.

18         MR. CARLEBACH:  No, I understand.  I'm just

19 extrapolating --

20         THE COURT:  Please don't say it's what I said,

21 Mr. Carlebach.

22         MR. CARLEBACH:  No, what I'm trying to say is at Your

23 Honor's point that state law governs when you can file a lis

24 pendens.  And I didn't make this point in my papers, but it

25 happens to be that it's what's called a slander on title.  If

1  you file a lis pendens inappropriately in a completely state

2  law venue against a property which is not part of your lawsuit,

3  that in itself is actionable.

4        But in this case where you have a bankruptcy stay for

5  people who are bankruptcy counsel, who regularly appear before

6  this court, are very well aware of what an automatic stay is,

7  to go ahead and file a lis pendens against the debtor's

8  property to create a clear advantage for their client in their

9  negotiations over that property is clearly a fact which would

10  change this court's view of how it would have decided the lift

11  stay motion.  And --

12        THE COURT:  Because?

13        MR. CARLEBACH:  Because if the court had been aware

14  that there was a third party who was interfering -- let me just

15  back up for one second.

16        The issue as the court may recall was the debtor was

17  trying to come up with a contract of sale and had the debtor

18  been able to come up with a contract of sale, it would have

19  been able to conclude a deal with the mortgagee.  And that's

20  what --

21        THE COURT:  You mean, within the 45 day period?  My

22  recollection of the record is that the debtor consented to the

23  entry of the order granting relief from the automatic stay

24  understanding that the debtor would have 45 days to work toward

25  obtaining a contract of sale on the property.  An order was to

1  be settled on 45 days notice.

2          So it was not so much what led up to the entry of the

3  order, but the framework within which the order was entered

4  that the debtor would have 45 days within which to sell the

5  property; isn't that right?

6          I mean, maybe my notes are wrong and my recollection

7  is wrong, but -- and that it was entered on consent and that at

8  the time it was entered, I believe you may have acknowledged in

9  open court both that there was no equity and that you would be

10 unable to confirm a plan -- if I recall being -- struck by the

11 productive nature of the hearing that we were able to identify

12 and address the issues in a fairly straight forward way.

13         That the debtor would not be able to confirm without

14 consent and so stay relief was appropriate and 45 days to sell

15 also made sense and I take your argument to be now that because

16 the debtor was unsuccessful in selling the property in those 45

17 days you have to look at what happened in that period and see

18 if there's a reason to revisit the framework the court put in

19 place?  Is that in effect the argument?

20         MR. CARLEBACH:  It'd have to go -- the hearing before

21 the one -- I believe that the March 6th was the point where the

22 debtor acknowledged to the court that it couldn't get.  But

23 there was a hearing before then in February -- I believe it

24 might have been February -- I'm not 100 percent sure when it

25 was.  It was in February was the initial hearing.

1           At that hearing the secured creditor acknowledged on

2  the record that there were discussions that were ongoing

3  between the debtor and the secured creditor.  And the framework

4  of those discussions was that the debtor's ability to get a

5  contract of sale.

6           And as long as the debtor got a contract of sale

7  which was equal to the amount of the other contract that had

8  been entered into pre-petition between the secured creditor and

9  Richmond Liberty that the secured creditor would be happy to

10 sell the property to the debtors prospective proponent of

11 sale -- prospective purchaser.

12          And the point was that at the time there was -- what

13 really happened was that Richmond Liberty's contract with the

14 secured creditor had a termination -- had a sunset clause of

15 November of 2014.

16          By engaging in all this activity they forced Richmond

17 Liberty to extend that sunset clause.  The point is by acting

18 illegally they prescribed the debtor's ability to negotiate

19 with it's secured creditor.  The debtor was involved in

20 negotiations -- acknowledged on the record in February.  And

21 then got for some reason we couldn't sign a contract, we came

22 back in March.  We had to acknowledge we couldn't sign a

23 contract.

24          And that's when we said to the court we'd like some

25 more time and the court agreed to put out the entry of the

1  order.

2          But the point was the reason why we couldn't get a

3  contract was because there was a third party, with the

4  knowledge of the secured creditor, that was filing illegal

5  encumbrances on our property.  And we couldn't resolve our

6  obligation with the secured creditor -- which it clearly

7  acknowledged it would have but for their illegal conduct.

8          Had they not filed a lis pendens against our

9  property, we would have cut a deal, we would have had a

10  contract and we would have cut a deal with our secured

11  creditor.

12          THE COURT:  Just as a -- just as a question, is there

13  any evidence before the court of that lis pendens other than

14  your argument?

15          MR. CARLEBACH:  Well I don't know if I acknowledged

16  it.  It's not in dispute, Your Honor, that they filed it.  I

17  mean, I don't know if I appended it to my papers.  It may be

18  appended to the adversary proceeding.

19          THE COURT:  You said you might, but you didn't. It

20  may be that there's a reference to it, but it's not -- I don't

21  believe it's before the court.  It may well be undisputed.

22          Mr. Carlebach, I guess I'm really struggling with how

23  those circumstances -- I'll take them at face value and assume

24  they're true.  You've suggested even perhaps there was some

25  intent to do harm associated with this.

1    I don't know.  I'd like to understand better why that

2  goes to the decision -- why that is new evidence -- having in

3  mind the Second Circuit Standard -- with respect to the lift

4  stay or relief that was granted on consent why some how that is

5  grounds to reconsider and reach a different conclusion.

6    Maybe it's torts' interference with contract claim;

7  maybe it's something else.  I understand the sale is coming up

8  soon, but I don't yet see how these facts and circumstances

9  undermine the basis for the court's entry of an order granting

10  a relief from the automatic stay.

11    I'll say again on consent because there's no equity

12  and no ability to confirm a plan.  I don't know that either of

13  those facts has changed.  Those were independently basis for

14  relief from the automatic stay.

15    MR. CARLEBACH:  Again, Your Honor, --

16    THE COURT:  Have either of those things changed?

17    MR. CARLEBACH:  They have not, Your Honor.

18    THE COURT:  Okay, so if I reconsider I would be

19  constrained to reach the same conclusion today, would I not?

20    MR. CARLEBACH:  Well in essence what you're saying

21  Judge, the point is sometimes the court has to look behind

22  exactly --

23    THE COURT:  Stay with my question for a moment and

24  then you can continue.  But my question was I would -- are not

25  the same grounds present today, would not the same result be

1  required today.

2         MR. CARLEBACH:  If you view that -- if you view this

3  case in a complete vacuum and just --

4         THE COURT:  If I view 362(b) --

5         MR. CARLEBACH:  If I look at it in a complete vacuum

6  of the circumstances of this case, the answer is yes.  It's the

7  same.  But I don't think that the court can look at this case

8  in a complete vacuum.  There was negotiations going on with the

9  secured creditor.  They were acknowledged on the record.  We

10 were trying to get a contract of sale.

11        If you look at the adversary proceedings that we

12 filed, there clearly were extenuating circumstances going on

13 here.  You have a third party filing illegal encumbrances

14 against the debtor to try to get an advantage in a negotiation.

15 I mean all of that is a direct violation and contravention of

16 everything the Bankruptcy Code stands for.

17        The Bankruptcy Court has a manifest interest in

18 letting a debtor negotiate with its creditors.  When some third

19 party comes in and violates the code to get an advantage, I

20 believe that this court has to step back and say one second.

21 I'm not going to give you relief for acting illegally.

22        I'm not going to let -- because the bottom line is

23 that they will benefit.  They will get to take our property

24 away from us because they will benefit by their illegal

25 conduct.

1          And I think that this court -- again, we're asking

2     for a stay.  A stay doesn't prejudice anybody's rights in the

3     long term.  It just says --

4          THE COURT:  You need a motion to reconsider.  That's

5     the motion you're arguing, --

6          MR. CARLEBACH:  I understand.

7          THE COURT:  -- not the -- we're not arguing the

8     motion you filed Friday night right now.

9          MR. CARLEBACH:  My motion to reconsider is basically

10    that but for the illegal conduct of a third party, this court

11    would never have granted relief from the stay.  Had this court

12    been aware at the time that we were telling the court we're out

13    trying to get a purchaser for this contract -- had this court

14    been aware that there was a third party that illegally filed

15    the lis pendens that completely hampered and prevented the

16    debtor from negotiating with its creditors from getting a

17    contract of sale, this court would have said just a minute.  We

18    have to allow the debtor the ability -- we have to first clear

19    up the illegal encumbrance before I can grant anybody relief in

20    this case.

21         THE COURT:  But don't you think the law provides

22    different remedies for interference with perspective economic

23    relations including, for example, the New York State cause of

24    action of interference with perspective economic relations?

25         I'm still -- I'm trying as hard as I can to view this

1 as comprehensively as possible, but in light of the motion to

2 reconsider the grant of relief from the automatic stay as

3 opposed to a broad equitable jurisdiction to prevent

4 inequitable conduct in commercial relations.

5      MR. CARLEBACH:  Again, you know, in this case, we

6 have represented to the court and it's in the court's record,

7 that there were negotiations ongoing between the debtor and the

8 secured creditor about a contract of sale.

9      We've put in the court's record the pre-petition

10 contract that was done between a third party and the secured

11 creditor.  So there's clearly -- there's clearly a basis for

12 the debtors representation that the secured creditor was

13 looking for a certain amount of money based on the contract

14 that they had already signed with the third party and it makes

15 complete sense that they would say to the debtor that listen we

16 have a contract with those guys, cut if you can come up with

17 similar money, we'll do business with you.

18      That's what the discussion was; that's what we

19 represented to the court and that's what was acknowledged by

20 the secured creditor on the record in February.  Not on the

21 March 6th date --

22      MR. HEALEY:  Your Honor, I have to object, this is

23 repeat.  He's made this representation that it never happened

24 in February.  Never acknowledged that we were negotiating or

25 prepared to agree to anything.

1          THE COURT:  Let's stay with the grounds for relief

2     from stay.

3          MR. CARLEBACH:  It was even represented in Richmond

4     Liberty's State Court papers that there was agreed to adjourn

5     because of negotiations.  We can get the transcript of that.

6     But the point is that Mr. Backenroth (phonetic) was here.  This

7     was all on the record, Your Honor.

8          The point is, Judge, that had this court been aware

9     under the circumstances of this case that the debtor's hands

10    were tied behind its back, unbeknownst to everybody, the

11    debtors hands were tired behind its back, it had two handcuffs

12    on its ability to negotiate because secretly a third

13    party -- the third party who wanted the property, who did a

14    deal pre-petition which may have been illegal -- put a lis

15    pendens that effectively, unbeknownst to the debtor, it

16    couldn't sell its property.  Anybody looked at it would see a

17    lis pendens, that is an important fact that this court, had it

18    been aware of, would not have lifted the stay even, even if it

19    were extant the provisions of 362, the grant stay relief, this

20    court would have acknowledged that there was an unfairness

21    going on here.

22          That there was a -- every debtor in a bankruptcy case

23    has a right to seek a resolution with its creditors especially

24    its secured creditor.  Whereas here the debtor could not seek

25    any resolution because a secret illegal lis pendens was put on

1  its property.

2          THE COURT:  What is a secret lis pendens?

3          MR. CARLEBACH:  A secret --

4          THE COURT:  Isn't it an inherently public thing?

5          MR. CARLEBACH:  Well the debtor does not --

6          THE COURT:  Answer my question please and then you

7  can go beyond that.  But I usually ask a question because I'm

8  really interested in the answer.

9          MR. CARLEBACH:  When I say secret, I mean that they

10 didn't serve it on the debtor.  They didn't let us know.  They

11 didn't give us notice of pendency.  They gave the secured

12 creditor notice -- the party that wanted to intimidate.  They

13 didn't tell us about it.  And we don't do regular title

14 searches on our property.  Prospective purchasers do regular

15 title searches.  The debtor does not do regular title searches

16 and by them putting a lis pendens and filing this lawsuit they

17 effectively chilled our ability to get a contract and to have

18 knocked them out of the game.  That's what happened here.

19          These are the facts and circumstances.  And what

20 we're asking for is that this court give us some time to flesh

21 out, you know, move forward with our plan, our contract of sale

22 and at the same time flesh out what they've done and

23 effectively get a ruling from this court that the secured

24 creditor has no liability from doing a deal with the debtor.

25 It flies in the face of the Bankruptcy Code that they could

1  secretly and through trickery put the secured creditor in the

2  situation that if they do a deal with us -- that where the

3  secured creditor is today -- if they do a deal with them, they

4  have been threatened, they will be sued.

5      THE COURT:  Let's hear from the -- I think the

6  secured creditor is able to speak for itself.  Is there

7  anything to cite a one of many statements of the standard

8  applicable here in this circuit, the major grounds now quoting

9  justifying reconsideration or an intervening change of

10 controlling law the availability of new evidence or the need to

11 correct a clear error or prevent manifest injustice.

12      Having the standard in mind, I take it that you are

13 arguing under --

14      MR. CARLEBACH:  Two and four.

15      THE COURT:  -- that the availability of what you

16 describe as new evidence or the prospect of manifest injustice

17 calls for reconsideration of the motion for relief from the

18 automatic stay.  And I take it that the argument in Realty and

19 Realty I is an identical argument; is that right?

20      MR. CARLEBACH:  There is also -- yes.  And I also

21 wanted to mention and I put down as a --

22      THE COURT:  How many of the properties were affected

23 by the lis pendens?

24      `    MR. CARLEBACH:  All of them as far as I know.

25      THE COURT:  All 13 properties?

1          MR. CARLEBACH:  Yes.  There's also -- I cited some

2    law in the adversary proceedings there's a decision from

3    Judge Gropper and there's case law out there that when -- I

4    don't have the name of the case with me -- when a creditors --

5          THE COURT:  Is it in your papers?

6          MR. CARLEBACH:  It's in the -- it's in my adversary

7    proceeding.  It's actually --

8          THE COURT:  You mean it's in the complaint?

9          MR. CARLEBACH:  It's in the complaint.  I actually

10   put the case law into the complaint.

11         THE COURT:  You can't -- we, -- you know, the court

12   does its own research.  We work very carefully with the briefs.

13   We do not go to adversary proceedings filed in Chapter 11 cases

14   on motions to reconsider in the Chapter 11 case to look for

15   case citations that may be of assistance.  If there's a case

16   you'd like to me read, please find the cite and state it on the

17   record.

18         I hope you understand that as hard as we try to

19   prepare, that would simply be beyond, I think, a reasonable

20   expectation that the Court --

21         MR. CARLEBACH:  Actually --

22         THE COURT:  --  and I may have well read the case

23   anyway.

24         MR. CARLEBACH:  It actually was appended to the

25   motion for reconsideration.

1          THE COURT:  In that case then I've considered as part

2   of what we looked at.

3          MR. CARLEBACH:  And the point was that in a

4   bankruptcy, a bankruptcy court has to look at, you know, if

5   somebody enters into a contract of any kind -- and this comes

6   up very often in the lease context of Section 365 --

7          THE COURT:  Yes.

8          MR. CARLEBACH:  -- which maybe on its face is not a

9   violation of the code.  It flows from the ipso facto causes

10  anything which is an attempt to hinder a debtor in possession's

11  ability to exercise its rights and remedies in a bankruptcy

12  case is also void as being a violation of the code.

13         The contract -- the pre-petition contract entered

14  into by Richmond Liberty was -- and the way they framed their

15  complaint -- was clearly designed to hinder the debtor's

16  ability to resolve it's issues with the secured creditor.

17  That's something the debtor has the right to do.

18         And that's clearly what they say in their complaint

19  is that the debtor doesn't have a right to do, which as a

20  matter of law makes their entire pre-petition contract void.

21  But more importantly it's a legal argument that this court --

22  and again the debtor couldn't have been aware of it because it

23  wasn't aware of that whole dynamic at the time the lift stay

24  motion was being filed that there was this outside party --

25  this outside force that had designed an illegal contract which

1  was designed to hinder the secured creditors ability to do

2  business with the debtor.

3          And that is per say a violation of the code.  And

4  once again -- again and it segue's into the manifest injustice

5  to allow this third party to get a lifting of the stay would be

6  a manifest injustice to the debtor because the debtor had every

7  right to negotiate with its secured creditor, unfettered,

8  unencumbered and they made sure that that didn't happen.

9          And now they --

10         THE COURT:  What prevents the debtor from negotiating

11 last week, this weekend and right now?

12         MR. CARLEBACH:  We have been negotiating.  What

13 prevents the debtor from getting to yes with the secured

14 creditor is the fact that their lawsuit -- their contract is a

15 threat -- a threat of liability against the secured creditor,

16 as we speak.

17         THE COURT:  But the lawsuit's filed in State Court

18 and exists whether or not there is a lis pendens you could even

19 argue that a lis pendens clarifies the situation by at least

20 indicating to the world who looks that there's a pending

21 lawsuit.  Not a judgment, but a pending lawsuit.  It doesn't do

22 more or less than that.

23         MR. CARLEBACH:  If --

24         THE COURT:  It's the lawsuit that creates a risk or

25 not, doesn't it?  I guess I don't see the jacobian consequence

1  of filing a lis pendens in the face of a pending lawsuit that

2  reflects -- you haven't said inaccurately -- the fact of the

3  pending lawsuit.

4          MR. CARLEBACH:  What is does -- what it does clearly

5  send is two things.  There's two answers, Judge.  First of all

6  it clearly sends a message to the world.  Based on our lawsuit,

7  you can't buy this property.  Because the lawsuit is you signed

8  a contract with us.

9          So the point is, it's a clear encumbrance on title.

10 If we were sitting, any prospective purchaser who sees this lis

11 pendens will say why would I get involved in this mess.

12         THE COURT:  But with the lawsuit --

13         MR. CARLEBACH:  Don't they have to come to this court

14 before they can -- don't they have to come to this court to get

15 permission to make a motion to lift the stay before they can

16 just encumber a debtor's property?

17         THE COURT:  I have at least once seen such a motion.

18 But that's not the question before me today.  And even were I

19 to reconsider it doesn't change what were the grounds or among

20 the grounds -- and are certainly adequate grounds -- at the

21 time and so far as I can tell remain adequate grounds today for

22 the granting for relief from stay.

23         There's no equity and there's no possibility to

24 confirm a plan over the objection of the secured creditor.  So

25 if I reconsider today, as you've acknowledged, the grounds

1  haven't changed.

2          There may be other claims.  There maybe -- you may

3  have state (indiscernible) I don't know.  But it sounds like

4  what -- at a minimum -- everyone can agree we have is a lot of

5  litigation over a piece of property that's going to be sold.

6          I would be pleased to be part of a process to have

7  that including a conversation, to have that happen as

8  efficiently and effectively and at the best possible price as

9  possible.  This court and this courtroom can be very useful in

10 that way.  But I'm -- well I've asked a lot of questions and

11 you've been helpful in responding to them.  I'm grateful for

12 that.  I appreciate the frustration in the situation, but I --

13 I'm not sure that I yet see a basis for relief.

14          All right, anything further?

15          MR. CARLEBACH:  I would just --

16          THE COURT:  Or shall we hear from them?

17          MR. CARLEBACH:  -- I would add finally, Judge, that

18 if you don't reconsider, the message to the world is that you

19 can engage in illegal conduct, you can violate the stay and get

20 a litigation advantage and interfere in a bankruptcy case.

21 That's the message that they're going to take from this that we

22 got -- we got away with violating the stay, we got what we

23 wanted.  Because they're aware of the dynamic that's going on.

24          And I put that dynamic before the court in the

25 adversary proceeding and I'm saying to the court that this is

1   new evidence.  It's a manifest in justice.  We should be

2   allowed to negotiate with our secured creditor without

3   interference from a third party secretly violating the code

4   because they've never shown up in this courtroom before today.

5          And if they had this big interest in the property and

6   were filing lis pendens and lawsuits they should have come to

7   this court and asked permission.  They knew the court would say

8   no.  They knew that we would get the deal with the secured

9   creditor, so they went and did an end-run around this court's

10  jurisdiction and you shouldn't allow that.

11         THE COURT:  Is there anyone else who would like to be

12  heard in support of the motion?  No response.  In opposition?

13  Let me hear from you, please.

14         MR. HEALEY:  Good afternoon, Your Honor.  I must

15  commend the debtors.  Commend them for their courage -- their

16  courage in claiming that the argument they advance in support

17  of reconsideration it's anything but a rehash, an argument they

18  made at the lift stay hearing on March 6th.

19         Before I address that point, I want to focus first on

20  the controlling law.  In the Second Circuit, motions for

21  reconsideration are generally denied unless the Movant can

22  point to a controlling decision or fact that the court

23  overlooked that might reasonably be expected to alter the

24  conclusion reached by the court.

25         Under this standard, the courts hold that motions for

1  reconsideration are not a vehicle for re-litigating old issues;

2  for presenting the case under a new theory or securing a

3  rehearing on the merits for otherwise taking a second bite of

4  the apple.  Tested under these standards, Your Honor, the Judge

5  is -- the debtor's motions fail.

6       At the lift stay hearing back on March 6th, the court

7  ruled that the lender had satisfied both prongs for relief from

8  the automatic stay under Section 362(d)(2).  The court found

9  that the debtors lacked equity in the property and the court

10  also found that the debtors properties were not necessary for

11  an effective reorganization that is in prospect.

12       In a motion for reconsideration, debtors do not

13  challenge either one of these conclusions, much less point to

14  any controlling decision or fact that the court overlooked when

15  it ruled that the lender had satisfied the test on the

16  362(d)(2).

17       THE COURT:  In substance their argument is that it

18  would be manifestly unjust for a stay violation which sometimes

19  is brought to the court's attention through the co-provisions

20  directed to stay violations -- and it probably would be more

21  helpful if the focus is the stay violation -- that that stay

22  violation has so tainted the process that the debtor in effect

23  lost the benefit of its bargain -- which was even though stay

24  relief was warranted -- it got 45 days to try to do its own

25  sale.

1          A not uncommon way to resolve a situation of that

2   nature and a productive way sometimes.  It's in everyone's

3   interest to have a prompt, consensual, good value kind of sale.

4   So that their argument seems to me to be not so much that the

5   order was wrong or so far as I can tell that it would go

6   differently today if I reconsider -- which doesn't necessarily

7   mean change my mind -- but that that stay violation is just

8   enough of a problem and enough of an offense to the bankruptcy

9   process that we should reset everything back several months in

10  effect and let the debtor try again to sell the property on its

11  own terms.

12          MR. HEALEY:  I don't believe under the circumstances

13  that under the applicable tests that such relief is permitted

14  or possible.  These debtors unless -- did not oppose the motion

15  for relief from the automatic stay.  At least two times during

16  the course of the hearing on March 6th, the debtors expressly

17  admitted that the grounds existed for vacating the automatic

18  stay at 362(d)(2).

19          The argument that they now advance for

20  reconsideration is preciously the same argument they advanced

21  when they asked the court to defer entry of the orders lifting

22  the automatic stay.  On pages eight and nine and 38 from the

23  transcript of the March 6th hearing the debtors raised the same

24  substance of argument they're now making now in their motion

25  for reconsideration.  Nearly verbatim.

1          Then, as now, they speculated at possible nefarious

2  conduct by some third party -- that third party Richmond

3  Liberty LLC.  They complained about the filing, the lis

4  pendens, against their properties during -- after the filing of

5  the Chapter 11 petitions.

6          They surmised that the lawsuit brought by Liberty --

7  Richmond Liberty against the lender was forcing the lender to

8  prosecute the lift stay motions and they alleged that the

9  actions thwarted the efforts -- that their efforts to sell the

10 property otherwise negotiate.

11          Those were the arguments they make now.  It's the

12 argument they made then -- the March 6th hearing.

13          THE COURT:  All right, but -- I have that transcript

14 before me.  Could you indicate again the pages?

15          MR. HEALEY:  Yes.  Page eight and nine -- eight

16 through nine -- and then again on page 38.

17          THE COURT:  They actually filed a lis pendens against

18 the debtors property in Chapter 11 and sued not the debtor but

19 sued the mortgagee.  Line 23 and 24.

20          So this was not unknown.  I think we can all agree

21 this was not unknown at the time of the March 6th hearing.

22 It's on the record.

23          MR. HEALEY:  And again it's re-iterated by

24 Mr. Carlebach on page 38 of the transcript as well, Your Honor.

25          THE COURT:  All right.  Doing an end-run around the

1  jurisdiction of the court -- same words.  All right, please

2  continue.

3          And there's two questions before the court whenever

4  there's a question of reconsideration and I have to say, viewed

5  against the number of decision that the court makes they're

6  relative rare.  But I, in a way, almost welcome them because

7  they come up -- they end typically in a setting where the facts

8  and circumstances are exceptional consequences to the case or

9  to the parties that's why you make the motion.

10         And to give the court a chance, at this point, some

11 months later -- many months later, March to July -- to be sure

12 frankly that we got it right.  Because, you know, while one

13 always tries as hard as one can to make ones best possible

14 argument or the best possible decision on the record, when you

15 look back sometimes you'll see things differently.

16         And the opportune to look back at a record with the

17 benefit of the passage of time and additional incites on the

18 parties can be useful.  So it is with that frame of mind that I

19 take up the question not only of whether grounds to reconsider

20 are there, but to put it bluntly,  whether I've got it wrong.

21 If I got it wrong, then the getting wrong can be fixed.

22         Whether or not one -- I guess I would view that as a

23 manifest injustice if I look at a record and say well without

24 doubt I now conclude as of today, July 13th, that what I

25 decided was wrong.  Then not fixing that would be unjust by my

1  metric.  Whether or not it would be a manifestly unjust by some

2  other matter, so.

3        MR. HEALEY:  What was true back at the time of the

4  lift stay hearing is still true today, Your Honor.  The debtors

5  lack equity in a property as based on the appraisals that we

6  produced.

7        THE COURT:  All right, anything further?

8        MR. HEALEY:  Your Honor, we rest on the papers.

9        THE COURT:  All right.  Who else would like to be

10  heard against the motion?  All right, good afternoon.

11        MR. FRIEDMAN:  Good afternoon, Your Honor.  Greg

12  Friedman from Kriss & Feuerstein on behalf of Richmond Liberty,

13  LLC.

14        I just had a letter in front of me with some law

15  regarding --

16        THE COURT:  If you need to look at something you can

17  look at it.

18        MR. FRIEDMAN:  Yeah, I just had a two seconds.  I

19  just wanted to bring to the court's attention.

20        THE COURT:  If it's the letter that's on the court's

21  docket, we can print copies for the parties?

22        MR. FRIEDMAN:  No, no.  It was just a letter I had

23  with some law regarding with respect to lis pendens and the

24  automatic stay.

25        The debtor makes much of this lis pendens and the

1  illegal conduct of Richmond Liberty.  And -- so they brought a

2  motion -- I mean, they brought an adversary proceeding against

3  Richmond Liberty -- which is not the subject of today's

4  hearing.

5          And Richmond Liberty, you know, has been painted, you

6  know, in a very negative light here and we fully plan on

7  showing that these claims have absolutely no merit.

8          Many cases in the Second Circuit have found that a

9  lis pendens is not a violation of the automatic stay and merely

10 just puts the world on notice as Your Honor previously stated

11 and is not an encumbrance on property.

12         I just had it in front of me, if you just give me one

13 second.  Just a secured -- and even Judge Duberstein himself

14 heard a decision In re Coto (phonetic) then there was also In

15 re Rhodes in the Southern District in New York which provided

16 that -- and I don't have those cites in front of me -- but we

17 will address them in our response to the adversary proceeding

18 complaint later on.

19         THE COURT:  So you think -- your client got a lis

20 pendens on a debtor's asset during the pendency of a Chapter 11

21 case without getting relief from stay; is that correct?

22         MR. FRIEDMAN:  That is correct, Your Honor.

23         THE COURT:  Do you think that was consistent with the

24 law?

25         MR. FRIEDMAN:  We do think it is consistent with the

1  law and we plan to bring that --

2       THE COURT:  You didn't think you needed stay relief

3  to do that?

4       MR. FRIEDMAN:  -- we plan to bring it to the court's

5  attention when -- if and when we respond to the complaint.

6       THE COURT:  To bring what to the court's attention?

7       MR. FRIEDMAN:  That there -- it wasn't a violation

8  of the automatic stay and the automatic stay isn't even

9  implicated when a lis pendens is filed on property as it's --

10  as it's not an encumbrance on property.  It merely puts the

11  world on notice.

12       And there's numerous decisions out there in the

13  Second Circuit by both -- by among Judge Brozman and Judge

14  Duberstein himself in the Eastern District that filing a lis

15  pendens on property puts the world on notice and does not

16  implicate the automatic stay.

17       THE COURT:  At least once I entered an order granting

18  relief from the automatic stay to file a notice of pendency,

19  but many times more than once I have entered orders granting

20  relief from the automatic stay that some would call comfort

21  orders that were not necessary but were sought by the parties.

22       I'm not expressing a view in one direction or

23  another.  I just know that as recently as January of this year

24  the issue became before me and was decided in the direction of

25  issuing that order granting the stay relief.

1          I guess what I'm struggling with is whether and to

2    what extent that isn't more appropriately addressed in the

3    different context of the proceedings of the debtor has brought

4    as opposed to some how grounds to revisiting the stay relief

5    order and the -- and reaching a different conclusion.

6          So, all right -- anything further?

7          MR. FRIEDMAN:  No, only that we'll be -- we shall be

8    addressing all the automatic stay issues and other causes of

9    action set forth in the complaint in the adversary proceeding

10   brought forth by the debtor.

11         That aside, we don't believe that these automatic

12   stay issues are anything new here.

13         THE COURT:  Well it is clear that they're in the

14   transcript.

15         MR. FRIEDMAN:  On page 38 as the court noted.  That

16   these issues have all been raised and we'll be addressing the

17   merits of the adversary proceeding shortly.

18         THE COURT:  Okay.

19         MR. CARLEBACH:  Your Honor if I may briefly respond.

20         THE COURT:  Please.

21         MR. CARLEBACH:  With respect to Mr. Healey's

22   comments.  Something has changed.  We have a sale.  We have an

23   amended plan and we have a sale.  We have sitting here in court

24   today is a prospective purchaser who has put down a hard

25   deposit of almost $500,000.  And we have a contract of sale

1    which is even superior to the pre-petition contract that the

2    mortgagee entered into with Richmond Liberty.

3        What's interesting is that as soon as the 45 days was

4    up in this court, the lis pendens was removed in that court.  I

5    think that the court has to look at the lis pendens in this

6    case with even closer scrutiny than it would otherwise because

7    the question is --

8        THE COURT:  Is it before me?

9        MR. CARLEBACH:  Well in a sense it is because I'm

10   moving for reconsideration based on the conduct that they

11   engaged in which is that they were tracking this court's

12   activity and they filed the lawsuit, they filed the lis pendens

13   just after we represent on the record -- the mortgagee

14   represents on the record that it's in negotiations -- as

15   referenced in their papers.

16       They filed the lis pendens and then they withdraw it

17   after they get -- after the 45 days is up and after they get a

18   more oppressive agreement with the secured creditor, they pull

19   it back.  Again -- and then as soon as they withdraw it, we get

20   a contract of sale with Mr. Deluca.

21       Again all of that points to one thing.  This lis

22   pendens and the lawsuit was designed to interfere with our

23   negotiations with our secured creditor in the bankruptcy to

24   send a very loud and clear message if you do business with

25   anybody but us we will sue you; we will litigate against you;

1  you won't be able to have a clear title and enjoinment to the

2  property.  I mean, it's as clear as day.

3         And we now -- once they have withdrawn, we now have a

4  plan and we're facing a secured creditor who is, you know,

5  under threat of litigation, have to enter into a more

6  oppressive agreement with them.  We want to knock that out.  We

7  want our plan to go forward.

8         And I think that if the court allows for some

9  expedited discovery for the facts to come out, it'll become

10 clear that there was an interference with the bankruptcy

11 process --

12        THE COURT:  You mean in your adversary proceeding?

13        MR. CARLEBACH:  Correct.

14        THE COURT:  Have you requested expedited discovery?

15        MR. CARLEBACH:  Well we've served the complaint and

16 we have waited for -- I have not waited for an answer.  They've

17 asked for a limited amount of time to -- extended time to

18 answer.  I didn't think it would be appropriate to get

19 discovery -- I mean, maybe in the context of this contested

20 matter we could do discovery on it.

21        But again, then you have the issue of repetitive

22 proceedings.  But the point is that there's no prejudice to

23 allow our plan, you know, the second prong of the relief that I

24 asked for yesterday was a standard application for combined

25 disclosure statement and plan.

1          THE COURT:  That issue is not before me right now.

2          MR. CARLEBACH:  I'm not asking for the relief, I'm

3     just suggesting that if the court grants the reconsideration

4     motion there's no prejudice because we have merely asked that

5     we be put on the same -- now that we have been finally able to

6     do a contract and to do a real plan because of the obstacles

7     that they've thrown in our way have disappeared, we can now put

8     our plan forward -- our sale plan forward.

9          If the court wants to conduct an open sale process,

10    we have no objection to that either.  But let it be fair.  Let

11    not one party who has engaged in illegal contract and conduct

12    in violation -- if not the letter, the spirit of the code --

13    and sought to interfere with the bankruptcy process.  Let us

14    get our --

15         THE COURT:  The debtor wants to sell the property

16    through an auction process, in effect, with the stalking horse

17    bidder subject to higher and better.  The secured creditor

18    wants to sell the property through an auction that is presently

19    scheduled for Thursday.

20         The parties agree the property should be sold at

21    auction, it seems, to the highest bidder.

22         MR. CARLEBACH:  Your Honor, --

23         THE COURT:  Am I right?

24         MR. CARLEBACH:  -- our plan does not call on it's

25    face for stalking horse.  It just has --

1          THE COURT:  Just an auction.

2          MR. CARLEBACH:  It's a sale plan.

3          THE COURT:  An auction is scheduled for -- everyone

4    agrees the property should be sold.  I take it the debtors

5    concern is that you'll get a better result in a different kind

6    of sale than a foreclosure sale; is that right?

7          MR. CARLEBACH:  We certainly would get a better

8    result and what we want is a non-collusive process where the

9    mortgagee is --

10          THE COURT:  What's collusive about a foreclosure

11   sale?

12          MR. CARLEBACH:  Right now the mortgagee is compelled

13   to credit bid its claim to -- in favor of the -- it's compelled

14   to cooperate with one party because of this contract that they

15   have.  So you can't have a real open sale.  We want an open

16   sale process where any party can bid.

17          I mean the secured claim in this case, as I believe

18   they've based on their proof of claim is about $10.5 million.

19   If necessary, we can start the bidding at 10.5 million.

20          But what we want --

21          THE COURT:  I'll give you five minutes to talk to the

22   parties and see if you can come up with something that makes

23   sense to all the parties on a commercial basis while I also

24   review the file and the arguments that you've made.

25          I'd like you to bring to closure your reply argument.

1    I know it's been more than an hour already.  You've been very

2    patient with all of my questions and I've said that to all of

3    you.

4         I will give you a few minutes to confer, but I want

5    to let you know that's the plan for this evening because I owe

6    you a decision.  You pointed out at the outset how important it

7    was for the court to decide today and I'm not going to not do

8    that.  The motion has been heard twice now.

9         But I see always the prospect.  Maybe this tells you

10   more about what I'm looking for than anything else.  But when

11   everyone's talking about a sale and an auction process and it's

12   just a question of -- the sale is scheduled for Thursday.  It's

13   not to close on an existing contract, it's a foreclosure sale,

14   is it not?

15        MR. HEALEY:  Correct.

16        THE COURT:  Okay.  All right.  I've got my work to

17   do.  You've got a little bit of work yourself.  Be back in 15

18   minutes, okay?

19        Mr. Carlebach, anything further?

20        MR. CARLEBACH:  No, Your Honor.

21        THE COURT:  It seemed you were getting into

22   different -- the realm of status and how we might have hearings

23   on final disclosure statement that we're not -- that's not this

24   motion and I need to be focused on this motion.

25        MR. CARLEBACH:  I would just point out that the

1  foreclosure sale is scheduled for Thursday.  As far as --

2          THE COURT:  Well I'm aware.

3          MR. CARLEBACH:  -- as far as the secured creditor is

4  concerned, they're constrained to credit bid their mortgage and

5  give the property over to Richmond Liberty under their

6  contract.  So it looks like an open foreclosure sale, but again

7  they have a contract which they are constrained to give the

8  property to Richmond Liberty.

9          Which, once again, Richmond Liberty's clause are all

10 over every item that's going on here because of that contract.

11         THE COURT:  Mr. Carlebach, I'd put the rhetoric to

12 the side for the moment. Thank you.

13     (Court in recess from 5:02 p.m. to 5:43 p.m.)

14         THE COURT:  Be seated.  Thank you for the time to

15 review the file.  I know the importance of the parties of

16 addressing the issues in a prompt way.  Is there anything

17 further to add to the record?

18         MR. HEALEY:  No, Your Honor.

19         THE COURT:  Mr. Carlebach, it's your motion.

20 Anything to add?  Or motions, I should say.  There are two

21 motions before the court to reconsider grants of relief from

22 the automatic stay in the Liberty Towers Realty and the Liberty

23 Towers Realty I case.  The parties have argued them together.

24 I shall rule on them together, of course, separate orders shall

25 enter.

1          MR. CARLEBACH:  Your Honor, I did want to just add

2     one point.  You mentioned -- the words you used were did I get

3     it wrong.  It was in terms of how you characterized your

4     decision on the motion to reconsideration.

5          I just wanted to point out to the extent that the

6     basis of the motion is new evidence and even the manifest

7     injustice is also based on new evidence, we do not believe that

8     you got it wrong in any way.  But it's simply that there are

9     new facts and circumstances that have come to light which would

10    be a basis for granting the relief that we ask for.

11         THE COURT:  Okay.  Which is to reconsider and not

12    grant the relief that was asked for by the Movant in the prior

13    motion; is that correct?

14         MR. CARLEBACH:  Correct.

15         THE COURT:  Okay, I understand.  When I say did I get

16    it wrong, I don't say it in the sense that parties would some

17    how be inappropriately critical of the court.  It's your job to

18    point out when courts make mistakes.  It's absolutely your job.

19         MR. CARLEBACH:  I say in this instance, we're not

20    basing on the court's missing controlling law or anything like

21    that.  It's simply based on new facts and circumstances that

22    have come to light.

23         THE COURT:  All right.  The motions before the court

24    are -- would you like to respond?  I think we have a basis to

25    proceed.

1          All right.  The matters before the court are the

2     motions to reconsider grants of relief from the automatic stay

3     concerning certain real property that is the property of these

4     two Chapter 11 debtors -- Liberty Towers Realty, LLC and

5     Liberty Towers Realty I, LLC.

6          And since the parties have acknowledged and the

7     record indicates the issues are similar; the arguments are

8     similar and the court's rulings in the two matters shall be

9     stated simultaneously, two orders shall issue.

10         The motions are before the court.  This is our second

11    hearing.  We've benefitted from hearing them not only in early

12    June at the conference of the parties, but again today and at

13    some length.  And with a lot of questions from the court -- I'm

14    grateful for your responses.

15         The background of the matter in a general way, I'll

16    summarize briefly.  These debtors each owned real property,

17    unimproved commercial real estate located on Staten Island with

18    respect to Liberty Towers Realty, LLC.  It's a single parcel --

19    well it's various parcels identified in the filings.  The same

20    with Liberty Towers Realty I.  The particular lot and block

21    numbers are set forth in the record.

22         The property is not developed and generates -- none

23    of the properties generate any income.  They are the subject of

24    this Chapter 11 case and as the record indicates, there have

25    been efforts to reorganize along different paths.

1          Ultimately there was made in the case a motion for

2     relief from the automatic stay.  That motion was made in both

3     cases on January -- on or about January 12th, 2015.  It was

4     heard on February 3rd and again on March 6th.

5          On consent of the parties, the respective debtors

6     were directed -- the Movant was directed to settle an order on

7     45 days notice to allow the respective debtors time to attempt

8     to secure a buyer for the property.

9          On or about April 28th, 2015 this court entered

10    orders in each of the cases vacating the automatic stay and

11    allowing W.F. Liberty, the lift stay Movant, to pursue its

12    rights under the applicable law with respect to these parcels

13    and this piece of real property in each case.

14         A couple of weeks later, on May 12th, 2015, the

15    debtor filed this motion to reconsider.  The court held an

16    initial hearing on the motion in June -- I believe on June

17    9th -- on these motions and I continued hearing and extensive

18    argument this afternoon as well.

19         The debtor argues, among other things, the following

20    in support of the motions to reconsider.  The debtor knows that

21    the court has the authority to alter or amend a judgment

22    pursuant to Federal Civil Procedure 59(e) and notes that the

23    debtor consented to the entry of the order granting W.F.

24    Liberty stay relief on condition with the understanding that

25    the debtor would have this 45 day period to work toward

1 obtaining a contract of sale for consensual sell of the

2 properties.

3          And to implement that, W.F. Liberty was directed to

4 settle a proposed order for stay relief -- granting the stay

5 relief on 45 days.

6          The debtor, as matters progressed, the debtor argues

7 that it was unable to obtain a contract of sale during that 45

8 day period and that the reason or a significant reason was an

9 illegal lis pendens filed against these properties by a third

10 party.  Who believed it had an interest in the property.

11          The lis pendens was done, the debtor argues, in

12 accordance or in conjunction with a lawsuit filed by that third

13 party against the mortgagee in State court seeking to enforce

14 the terms of a pre-petition contract of sale of the property.

15 Debtor described this in some detail on the record.  I note

16 that there is -- there has been suggested but -- well I'll just

17 say that even in arguably the absence of direct evidence of

18 these State court proceedings before this court, I'm going to

19 take them as part of the record and proceed as if matters there

20 are and I have no reason to doubt preciously as the debtors

21 counsel has described them.

22          The debtor further argues in support of the relief it

23 seeks that once the lis pendens was removed, the debtor was

24 able to obtain what it describes as a hard contract of sale --

25 which is filed as an attachment to the motion -- at a sale

1  price set forth in Exhibit C of, I believe, $9 million with a

2  significant several hundred thousand dollar down payment.  That

3  is to say, plainly, a serious contract.

4        The debtor has also, since the motion was granted and

5  the order entered, filed an amended plan of reorganization and

6  disclosure statement and intends to file additional motions

7  seeking additional relief with respect to various asserted

8  legal actions of the unnamed -- up to this point unnamed now

9  identified third party who allegedly violated the automatic

10 stay.

11       For all these reasons the debtor argues that the

12 orders, in each of these two cases, vacating the automatic stay

13 be of themselves vacated and that the debtor be given -- well

14 first that they be reconsidered and upon reconsideration

15 vacated so that the debtor has an opportunity to demonstrate

16 the proposed plan is feasible and confirmable.

17       The debtor has acknowledged today on the record of

18 this hearing that an argument as the debtor acknowledged

19 previously that the grounds relied upon, among others, by the

20 court at the time of the initial motion -- that is that there

21 is no equity apparently in this asset for the debtor's Chapter

22 11 Estate in either case, but a prospect of reorganization

23 successfully to be confirmed in view of the ongoing intention

24 to oppose the plan that has been asserted and reaffirmed on the

25 record today by W.F. Liberty.

1          The court notes that in reviewing the -- well I turn

2     to the response of W.F. Liberty to the motion of the papers,

3     which are very helpful as with the debtors speak for

4     themselves.  I'll summarize some of the highlights, some of the

5     points made.

6          W.F. Liberty argues that the debtor has raised new

7     arguments, but rather restates arguments previously raised at

8     the hearings on the motion for stay relief, including the March

9     hearing.  A transcript of which is available in the record of

10    this motion at hearing on March 6th.

11         The objector, the Movant, on the lift stay motion

12    W.F. Liberty also argues that on March 6th -- the last hearing

13    on the motion for stay relief -- the debtor did not dispute

14    that it lacked equity in the property nor that it would be

15    impossible for the debtor to confirm a plan over the objection

16    of W.F. Liberty as it controls both the secured notes, secured

17    classes of claims.  So its consent would be a necessary piece

18    of confirmation.

19         The -- W.F. Liberty further argues that the debtor

20    raised the same concerns that are raised in this motion to

21    reconsider.  Namely the filing of the lis pendens against the

22    property and the alleged illegally State court action pending

23    against the debtor.  And the transcript does confirm that this

24    is so.

25         For example, at page eight or so of the transcript

1  there is a reference -- the debtor's counsel indicates that he

2  was shocked to learn that there was a lis pendens filed against

3  the debtor's property in Chapter 11 and that the mortgagee was

4  sued in the option contract.

5          The debtor's counsel makes that same point some pages

6  letter -- later -- excuse me for miss speaking -- at page 38

7  where debtor's counsel argues as he argued today that the

8  bidding was chilled -- that the prospect of the sale was

9  chilled, I should say not bidding.  Sorry for misstating the

10 record.  And that this is an effort, in effect to do an end run

11 around the jurisdiction of this court.  All those points made

12 in March of 2015 in the original hearing of this motion.

13         W.F. Liberty argues further that the standard under

14 Federal Civil Procedure 59(e) -- applicable here in bankruptcy

15 as well -- cited by the debtor in support of the motion -- is a

16 strict standard and a high standard with relief granted

17 generally only if the court over looked a controlling decision

18 or factual matter that would have materially influenced the

19 decision.

20         The standard is high for a good reason because it

21 needs to -- it needs to be high so that motions are argued and

22 decided once and if they're wrongly decided and appealable,

23 they can be appealed.  But parties are urged by courts not to

24 attempt to make repetitive arguments on issues that have been

25 thoroughly considered and decided by a court.

1          Here, W.F. Liberty argues the debtors made no new

2     arguments or pointed to any new facts that the court did not

3     consider before granting stay relief.  And further, or even

4     more that the arguments made by the debtor, W.F. Liberty

5     argues, are relevant to the court's conclusion that both of the

6     prongs required for stay relief under Section 362(d)(2) have

7     been satisfied.  And as the debtor's counsel candidly

8     acknowledged today that that has not changed.

9          So I turn to the legal standard, Federal Civil

10    Procedure 59(e) applicable here pursuant to Bankruptcy Rule

11    9023 provides that a motion to alter or amend a judgment shall

12    be filed no later than 14 days after the entry of a judgment.

13    Pursuant to Federal Civil Procedure 54, the order that this

14    court entered constitutes a judgment that may be reconsidered

15    under Rule 59 because it is an order from which an appeal lies.

16    Crown v. Burton, In re Swift, 2014 Westlaw 103229, at star 3,

17    decision of our chief judge, Judge Craig.

18         Unlike Rule 60, Rule 59 it does not prescribe

19    specific grounds for granting a motion to alter and amend an

20    otherwise final judgment.  So found the Southern District of

21    New York, District Court in YouTube Home Entertainment, Inc.,

22    versus Limen Music and Video Training reported at 2005 Westlaw

23    2230454, at star one.

24         According to the Second Circuit's decision in Munafo

25    reported at 381 F.3rd 99 at 105.  As the Second Circuit has

1  said and as the parties do not dispute, now according the major

2  grounds justifying reconsideration or an intervening change of

3  controlling law, the availability of new evidence or the need

4  to correct a clear error or prevent manifest injustice for

5  <u>Atlantic Airways Limited versus National Mediation Board</u>, 956

6  F.2d 1245, 1255, Second Circuit 19 -- yes 1992.  Sorry.

7        As the courts have further noted including the Second

8  Circuit the standard, no quoting, for granting such a motion is

9  strict and reconsideration will generally be denied unless the

10 moving party can point to controlling decision or data that the

11 court over looked matter, in other words that might reasonably

12 be expected to alter the conclusion reached by the court.

13 <u>Schreider versus C.S.X. Transportation Inc.</u> 70 F.3d 255 at 257,

14 Second Circuit 1995.

15       Courts narrowly construe this standard and apply it

16 strictly against the moving party so as to "dissuade repetitive

17 arguments on issues that have already been considered fully by

18 the court."  <u>Calibing Cove versus E.I. Dupont, Gene and Moores</u>

19 <u>and Company</u> 624 F.2d -- excuse me -- F. SUP 747 at 748;

20 Southern District of New York, 1985.

21       And on the motion to reconsider facts not raised at

22 the original hearing that could have been raised will not be

23 considered facts of the court overlooked.  Voting in substance,

24 Chief Judge Craig, again, in <u>In re Flatbush Square</u>, 508 B.R.

25 563 at 571.

1          The Second Circuit has stated that where 59 is not a

2    vehicle for re-litigating old issues, presenting the new case

3    under new theories, securing a rehearing on the merits or

4    otherwise taking the "second bite of the apple." <u>Seacorp Corp</u>

5    <u>versus J.B.J. Corp</u>, 157 F.3d 136 at 144, Second Circuit 1998.

6          Similarly a party who realizes -- now quoting --

7    "with the acuity of hindsight that he failed to present his

8    strongest case at trial, is not entitled to a second

9    opportunity by moving to amend a finding of fact or conclusion

10    of law" <u>U.S. versus Local 1804-1</u>, 831 FSUP 167 at 169.

11          As the Second Circuit has observed, "Re-litigants

12    have once battled for the courts decision, they should neither

13    be required nor without good reason permitted to battle for it

14    again." <u>Danick versus Glutenco</u>, 327 F.2d 9449, 53 Cert denied

15    377 U.S. 934 in 1964.  So a good long ago, but still good

16    guidance from the Circuit.

17          I note that -- as I noted during counsel's

18    argument -- that while I respect and of course I follow the

19    guidance from the circuit, I also take the opportunity of

20    motion to reconsider, to consider the record and pose to myself

21    the question, as the record poses the question, as the motion

22    poses the question, was there a mistake here.  Should this --

23    is this decision not the correct decision?  Did I enter an

24    order that I would enter differently if I were to enter it

25    today?

1          And I don't ever shirk from the opportunity to ask

2     that question of a record, of myself and whether or not a

3     technical narrow application of the standard of opening the

4     door to reconsideration is met.  I view such a motion as an

5     invitation and an opportunity to make sure that I would make

6     the same decision today and even where the grounds and the

7     standard applicable may not appear necessarily to give rise to

8     grounds for reconsideration if the entire record suggests that

9     perhaps focusing on the manifest injustice component that a

10    mistake was made and needs to be correct, I will not hesitate.

11          And I say that emphatically.  I will not hesitate to

12    reconsider and revise and amend my own order.  I don't think

13    I'd be doing my job if I did anything other than that.

14          I note briefly the standard under Federal Rule Civil

15    Procedure 60, relief from a judgment or order made applicable

16    in Bankruptcy Courts by Bankruptcy Rule 9024.  This rule

17    provides that a court may relieve a party from a final order on

18    grounds of newly discovered evidence that with reasonable

19    diligence could not have been discovered in time to move for a

20    new trial under Rule 59(b).

21          This rule permits a court to relieve a party from a

22    final order on grounds of fraud whether previously called

23    intrinsic or extrinsic.  Again quoting misrepresentation or

24    misconduct by an opposing party.

25          As this court found in <u>In re Taub</u>, reported at 421

1  B.R. 37 at 42, as the Second Circuit has found, since 60(b)

2  allows extraordinary judicial relief that is invoked on the

3  opponents showing exceptional circumstances, it is strictly

4  applied for tenant that a courts final judgement should not

5  lightly be reopened.

6       All right.  I turn to the grounds for reconsideration

7  and note again that they are the changing controlling law, the

8  availability of new evidence or the need to correct clear error

9  or prevent manifest injustice.  <u>Virgin Atlantic</u>, 956 F.2d at

10  1255.

11       The debtor suggest in substance that the lis pendens

12  and its consequences were new evidence.  But, of course, as the

13  record shows and the debtor can't persuasively deny, these

14  matters were raised by the debtor and were raised in strong

15  terms during the March 6th hearing on the motion for stay and

16  relief.  The debtor may suggest that in substance, the newly

17  discovered evidence or the new facts or the new record include

18  not only that lis pendens but its consequences.

19       And the consequences include that now that the lis

20  pendens or upon the -- again taking their statements on the

21  record at their face value -- upon the withdrawal or removal or

22  lifting of the lis pendens a hard contract was entered into.

23  I'll consider that as new evidence.  That's -- I take that to

24  be something that was not known before because it hadn't

25  happened before, but I do question whether the prong of new

1  evidence is met by the record before me and note again that a

2  review of the transcript does show that the same facts and the

3  same arguments and even some of the same language was used by

4  counsel then and now.

5       I note that no party has pointed to nor has the court

6  found a change in controlling law.  I note that I myself

7  embrace the opportunity to correct a clear error and I think

8  it's probably always my job to prevent a manifest injustice

9  when it's within my jurisdiction to do -- to do that.

10      I note that the standard here is a high one that

11  narrow construction is the rule.  I look at the entire record

12  and I struggle to see whether manifest injustice is present

13  here.  The lis pendens that was present that is at the core of

14  much of the argument was not a secret.  It arose from a case

15  that was, itself, not a secret.

16      There's no suggestion of fraud or inappropriate

17  behind the scenes conduct leading to that.  None of a nature in

18  all events that's persuasive to the court that the high, high,

19  high standard of manifest injustice would be invoked.

20      The record seems to suggest at most that the debtor

21  acknowledged there were grounds for stay relief; acknowledges

22  today there are grounds for stay relief, but also wanted the

23  opportunity and it's a reasonable opportunity to seek, to try

24  to achieve a better result for the debtor and for the estate by

25  undertaking the sale on its own and the debtor couldn't do it

1  in the 45 days that the debtor got -- which was the time period

2  within the debtors contemplation of a reasonable time period.

3          And now the debtor would like, perhaps, to revisit

4  the terms and conditions of what was a reasonable opportunity

5  to try to sell on its own and to sell through a plan and the

6  debtors made some steps, but those steps come after the stay

7  relief order has been entered; a foreclosure proceeded and a

8  foreclosure sale was scheduled.

9          And that brings us to today.  I am constrained to

10 conclude that on the record, the debtor has not shown that on

11 the basis of a changing controlling law; on the basis of

12 availability of new evidence; on the basis of the need to

13 correct a clear error prevent manifest injustice, there are

14 grounds to reconsider, but noting the importance of the issues

15 to the parties and just in case I'm wrong on that conclusion,

16 the right to reconsider today I presume -- I in affect pick up

17 where I left off with a motion for relief from the automatic

18 stay.

19         But based on the record made before me, you know, to

20 and through today and this evening -- 6:05 p.m. on July 13th,

21 2015 -- and I note that with respect to Section 362(d)(2) of

22 which the parties have noticed and pursuant to which the Movant

23 has moved there are two prongs to stay relief under Section

24 (d)(2) of 362 of the Bankruptcy Code that the debtor does not

25 have an equity in the property and that the property is not

1  necessary to an effective reorganization which has been viewed

2  as, in this circuit, as an reorganization that is reasonable in

3  prospect.

4         And I conclude today as I concluded previously in

5  light of the entire record, including the new information and

6  argument brought forth today, that there are grounds for relief

7  from the automatic stay in that the debtor does not have equity

8  in the property and that the property is not necessary to an

9  affective reorganization that is reasonably in prospect because

10  while the debtor has made some strides, the secured creditor

11  has not wavered in its position that it would not support the

12  plan.

13         And since it holds a position in a case that permits

14  it to exercise and appears control over confirmation, as the

15  debtor's counsel has acknowledged, the same criteria that

16  supported stay relief then supports stay relief now.

17         So for the reasons reflected in the record, the

18  motion to reconsider in each case is denied.  And in the

19  alternative, reconsidering the motion for stay relief, I find

20  that stay relief remains warranted based on the entire record.

21         It's not to say that it doesn't make sense for the

22  parties to figure out the most affective way -- if there is an

23  affective way to proceed with respect to realizing value in

24  this property.  You've got lots of tools and lots of litigation

25  apparently pending in other courts.  I understand there is a

1  sale scheduled for Thursday.

2          That does bring us to the remaining motion -- and the

3  court will so order the record and if I conclude that it's

4  appropriate to issue an appropriate written order -- and it

5  probably makes sense.  I'll try to get that order -- not

6  summarize the grounds -- but which will incorporate by

7  reference the grounds stated on the record of today's hearing.

8          I guess the remaining question is how to proceed with

9  respect to the motion filed on Friday night.  I don't see a

10  basis in that record yet for interim relief and I know,

11  Mr. Carlebach, the sale is on Thursday.

12          I don't know if the parties have conferred on

13  whatever steps might be agreeable to try to approach this in a

14  business way and I encourage that.  I've offered to conference

15  previously with the parties and I repeat the offer.

16          But otherwise, I think we've gone about as far as we

17  can today and I'll be happy to hear from the parties about what

18  schedule might permit a meaningful consideration of the

19  emergency motion.  If the suggestion on the record is that it

20  needs to be considered in the next 48 hours, I think it's going

21  to be difficult to pay appropriate attention to the

22  requirements of due process, but it's always my job to do the

23  best I can to meet the needs of the cases.

24          Mr. Carlebach, I know you're disappointed, but I

25  still need to hear from you.  I'm sorry.  And I always feel

1  after a long oral decision I owe an apology to parties.  It

2  can't be fun to listen to a court give its decision like that.

3          But, Mr. Carlebach?

4          MR. CARLEBACH:  Yeah, I mean just in terms of the

5  emergency motion.  Obviously we would need to -- it would need

6  to be heard over the next -- as Your Honor says -- over the

7  next 48 hours.  And I guess the most important argument is

8  obviously the irreparable harm that we would suffer by virtue

9  of the foreclosure sale going forward.

10          In terms of the likelihood of success on the merits,

11  again I'm not sure whether Your Honor's view would differ very

12  much from the analysis that you've made in the --

13          THE COURT:  The automatic stay issue was a tough one

14  for the debtor based on this record.  And what you need is the

15  reimposition of the stay.  What you seek first and foremost in

16  Roman I. I think it's a very difficult obstacle in this

17  situation.

18          MR. CARLEBACH:  Again, I think that -- I may not have

19  referenced it, but we'd obviously be moving under Section

20  105 -- which is a water equitable standard than --

21          THE COURT:  I think a certain number of courts have

22  found that Section 105 generally needs to give affect to a

23  different code provision.  I think it even says that.

24          But in all events, from the stand point of

25  scheduling, maybe it makes sense to conference very briefly off

1  the record just on the administrative side of things and see if

2  there's anything productive that can be done to address the

3  issues raised by the papers.

4        You know, at the end of the day it's a valuable piece

5  of property.  It's significantly encumbered, it appears on the

6  record, it's undisputed that it is encumbered in excess of its

7  value or to use the term of under water.  So I think that

8  presents some challenges too.

9        Let's go off the record in order for planning

10  purposes, I don't think we'll need to go back on the record.

11  All right?  We'll find an adjourned date for status under an

12  appropriate time.

13        All right.  Let's go off the record.

14                      * * * * *

15

16

17

18

19

20

21

22

23

24

25

# **C E R T I F I C A T I O N**

I, WANDA ESHLEMAN, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter, and to the best of my ability.


/s/ Wanda Eshleman

WANDA ESHLEMAN

J&J COURT TRANSCRIBERS, INC.    DATE:    July 20, 2015